# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**RAUL CHARLES FARRIS,**

      **Plaintiff,**

**v.**         Case No:   6:18-cv-278-Orl-41KRS

**METLIFE, INC.,**

      **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

    This cause came on for consideration without oral argument on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **DEFENDANT'S MOTION TO DISMISS (Doc. No. 11)** |
| **FILED:** | **April 20, 2018** |

| | |
|---|---|
| **MOTION:** | **DEFENDANT'S MOTION TO STAY TIMELINES AND DISCOVERY (Doc. No. 12)** |
| **FILED:** | **April 24, 2018** |

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S SECOND MOTION FOR DEFAULT JUDGMENT (Doc. No. 13)** |
| **FILED:** | **April 20, 2018** |

## I. PROCEDURAL HISTORY.

Plaintiff, Raul Charles Farris, filed this action against Defendant, MetLife, Inc. ("MetLife")[1] on February 26, 2018. Farris, who claims he was erroneously diagnosed as a paranoid schizophrenic in 2004, characterizes this as an action "for the removal of a corporate gang-stalking operative who is using stolen U.S. Government subliminal-messaging equipment." Doc. No. 1, at 5; Doc. No. 1-1 ¶ 27.

According to Farris, the events giving rise to his claims began in 1996 and have continued through the present. Doc. No. 1-1 ¶ 1. He describes himself as a "targeted individual" who has been a target of "subliminal messaging" for more than twenty years. *Id.* ¶¶ 1-2. During this twenty-year campaign of harassment, MetLife initiated a breakup between him and his fiancé, caused an attractive female branch manager to set him up to look like a "nut case," hid a tracking device on his car, hid a communications device on his car to talk to him through the car's speakers, hid similar devices on his parents' cars as well as on a bus in which he was riding, bugged a used computer he purchased on the internet, and wiretapped his cell phone and voicemail. *Id.* ¶¶ 3-5, 9, 35-36.

Farris was "gang-stalked" by hundreds of mostly unwitting individuals who joined social websites and communicated by text-messaging in an effort to gaslight him into thinking he was losing his mind. Doc. No. 1-1 ¶ 7. A MetLife operative broadcasted a high-pitched grinding metal axle sound to make him leave home, forcing him to move thirteen times since 1998. *Id.* ¶ 8. He was "tortured" with loud noises, high pitched sounds, and sleep deprivation, which induced "sick nightmares" upon him for more than ten years. *Id.* ¶ 12. MetLife's operative conducted a form of

---

[1] Metropolitan Property and Casualty Insurance Company ("MetLife") says that it was improperly named as MetLife, Inc. in the caption. Doc. No. 11, at 1.

electronic eavesdropping called "Van Eck phreaking" for the purpose of spying on his email, intellectual property and other work product.  *Id.* ¶ 11.

Farris was made to appear to be a problem employee and MetLife used subliminal messaging to convince him that his mistreatment was simply a joke.  When he attempted to confront someone about his mistreatment, he refused to leave MetLife's front waiting room and was ultimately arrested for trespassing.  *Id.* ¶ 13.  He spent ten days in jail, where he was harassed by five other inmates in "another set-up" by MetLife.  *Id.* ¶¶ 13-14.

MetLife's operative used sleep deprivation and subliminal messaging on multiple occasions to make him fall asleep while driving.  On one occasion, three drivers ran his car off of the highway and down a steep embankment.  *Id.* ¶¶ 17, 26.  Due to MetLife's constant harassment, he was forced to leave his home and abandon his belongings, after which MetLife stole personal items from him.  *Id.* ¶¶ 18-19.

MetLife illegally surveilled and subliminally manipulated his friends, relatives, neighbors and coworkers without their knowledge.  *Id.* ¶ 20.  One of its daily objectives was to get him involved in arguments with other people by using noises, "skits," subliminal messaging, and rebroadcasted amplified noise such as leaf blowers, lawn mowers and dogs barking.  *Id.* ¶¶ 21, 23.  The goal of these activities was to prevent him from educating himself by reading books or internet articles, thereby stopping him from keeping up-to-date on current events, scientific achievements and mischief in the insurance industry.  *Id.* ¶ 24.

MetLife's actions have caused him "to suffer multiple indignities, false charges, and humiliations."  *Id.* ¶ 25.  He has been unable to obtain a job, unable to obtain an anthropology degree, and prevented from socializing, dating and finding a wife.  *Id.* ¶¶ 22, 25, 30, 38, 54.

MetLife's "ongoing criminal activity" also prevented him from publishing a book that would have prevented the spread of deadly diseases, including Ebola, Zika virus, AIDS, and leprosy.  *Id.* ¶ 32.

MetLife used subliminal messaging to try and persuade him to commit suicide.  *Id.* ¶ 31. It has also restricted his breathing by broadcasting high-tech subliminal messages on prerecorded medical CDs.  *Id.* ¶ 40.  It placed radio frequency radiation under his bedroom floor and once used a laser microphone to emit "nonsensical talk" to distract him when he was in court.  *Id.* ¶¶ 44, 46. On another occasion, a MetLife operative attempted to hypnotize and brainwash him by using high-tech methods and subliminal messaging.  *Id.* ¶ 48.  The operative used high pitched sounds, electromagnetic transmissions and torture to affect Farris's central nervous system, causing him headaches, eye pain, blurred vision, inner ear pain and other symptoms that negatively affected his health.  *Id.* ¶¶ 49, 51, 52, 55, 56.  Subliminal messaging caused him to bite his own tongue and "microwave radiation" was used to induce hallucinations.  *Id.* ¶¶ 62, 64.

MetLife also engaged in prohibited political and legal conduct.  Because he is a self-described conservative Republican, Farris was a victim of "workplace mobbing," which occurred at the instructions of upper management, which was composed of primarily Democrats.  Doc. No. 1, at 5; Doc. No. 1-1, ¶ 10.  In 2015 and 2016, MetLife's operative spied on him while he served as an unofficial adviser to presidential candidate Donald J. Trump and campaigned and communicated with Mr. Trump.  *Id.* ¶ 59.  The operative delayed the filing of this lawsuit by using subliminal messaging and long-range surveillance gear to monitor, discourage, and prevent Farris from meeting and communicating with attorneys.  *Id.* ¶ 67.

Based on these and other allegations, Farris alleges violations of twenty-five separate federal statutes as well as the First, Fourth, Fifth, and Ninth Amendments.  Doc. No. 1, at 3; Doc. No. 1-1, at 1-3.  He further asserts claims for defamation, invasion of privacy, and fraud.  Doc. No. 1, at 4.

- 5 -

He contends that he is entitled to punitive damages, money in escrow for other victims, bankruptcy reimbursements, reimbursement for medical bills, penalties for "stonewalling," attorneys' fees, costs and expenses. *Id.* at 5.

On April 10, 2018, Farris moved for a default judgment against MetLife. Doc. No. 6. I denied that motion because he had not previously filed a motion for entry of a Clerk's default. Moreover, I noted that it did not appear that he had properly served MetLife. Doc. No. 8.

MetLife moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) or, alternatively, under Rule 12(b)(6). Doc. No. 11. MetLife has also filed a motion to stay timelines and discovery until after the Court determines whether it has subject matter jurisdiction over this action. Doc. No. 12. Farris did not file a response in opposition to the motion to dismiss, but instead filed another motion for default judgment, in which he requests that the motion to dismiss "be rejected as a deeply flawed and unsalvageable submission" that "is riddled with erroneous information and opinions." Doc. No. 13, at 2.

The foregoing motions have been referred to me. They are now ripe for review.

## II. LEGAL STANDARD.

*A.     Federal Rule of Civil Procedure 12(b)(1).*

"Subject matter jurisdiction is appropriately dealt with by means of a . . . Rule 12(b)(1) motion to dismiss." *McCants v. Ala.-W. Fla. Conference of the United Methodist Church, Inc.*, 372 F. App'x 39, 40 (11th Cir. 2010) (per curiam) (alteration in the original) (quoting *United States v. Blue Cross & Blue Shield of Ala., Inc.*, 156 F.3d 1098, 1101 n.7 (11th Cir. 1998)) (internal quotation marks omitted).[2]  A motion to dismiss for lack of subject matter jurisdiction can take the form of

---

[2] Unpublished decisions of the Eleventh Circuit are cited as persuasive authority.

either a facial or factual attack. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (per curiam). A facial attack requires the court merely to look and see if the claimant has sufficiently alleged a basis of subject matter jurisdiction. *Id.* at 1529. Conversely, a factual attack challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings. *Id.* "[O]n a motion to dismiss for lack of subject matter jurisdiction, the non-moving party has the burden of showing that it properly invoked the court's jurisdiction." *Bok v. Mut. Assurance, Inc.*, 917 F. Supp. 778, 779 (M.D. Ala. 1996) (citation omitted). In federal court, subject matter jurisdiction can be established through either: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction under 28 U.S.C. § 1331; or (3) diversity jurisdiction under 28 U.S.C. § 1332. *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997).

      B.     *Federal Rule of Civil Procedure 12(b)(6).*

When evaluating a Rule 12(b)(6) motion to dismiss, a court looks to see whether the claim "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a *pro se* pleading should be liberally construed, *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam), a *pro se* claimant is still "subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure," *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989). Federal Rule of Civil Procedure 8 demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (2009). Accordingly, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Cobb v. Florida*, 293 F. App'x 708, 709 (11th Cir. 2008) (alteration in original) (quoting *Twombly*, 550 U.S. at 555). A claimant is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*,

550 U.S. at 555.  The allegations must "nudge[] the[] claims across the line from conceivable to plausible."  *Id.* at 570.

**III. DISCUSSION.**

MetLife primarily makes a facial attack on Farris's complaint, arguing that he has not sufficiently alleged a basis for the Court to exercise subject matter jurisdiction over this action. "The district courts of the United States . . . are courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute."  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (internal quotation marks omitted) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)).  "While complaints filed by pro se litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers, even a pro se plaintiff bears the burden of establishing that the Court has subject matter jurisdiction."  *Grady v. United States Dep't of Def.*, No. 16-14293-ROSENBERG, 2017 WL 35531, at *1 (S.D. Fla. Jan. 4, 2017), aff'd sub nom. *Grady v. United States Gov't*, 702 F. App'x 929 (11th Cir. 2017).  As explained in *Grady*:

> [F]ederal courts are without power to entertain claims that are so attenuated and unsubstantial as to be absolutely devoid of merit.  No federal question jurisdiction exists when the complaint is patently insubstantial.  To be dismissed on this ground under Rule 12(b)(1) the claims must be flimsier than doubtful or questionable they must be essentially fictitious.  Claims that are essentially fictitious include those that allege bizarre conspiracy theories, any fantastic government manipulations of [an individual's] will or mind [or] any sort of supernatural intervention.

*Id.* at *2 (internal quotation marks and citations omitted).  "While a conspiracy to deprive a citizen of protected constitutional rights, whether entered into by public or private actors, certainly may fall within the ambit of this Court's subject-matter jurisdiction . . . the Court's duty to inquire into its jurisdiction entails more scrutiny than simply resting upon such nominal labels or magic words when they are buried in the text of otherwise attenuated[] frivolous arguments, allegations, and

conclusions." *Watson v. United States*, No. 2:09-CV-19-WKW, 2009 WL 2960353, at *3 (M.D. Ala. Sept. 10, 2009).

The allegations in Farris's complaint are exactly the kinds of fictitious claims and "bizarre conspiracy theories" that warrant dismissal under Rule 12(b)(1). There is no "legal substance to the position the plaintiff is presenting" and his claims lack the required "foundation of plausibility." *Southpark Square Ltd. v. City of Jackson, Miss.*, 565 F.2d 338, 342 (5th Cir. 1977).[3] Courts have repeatedly held that allegations of conspiracy theories involving extreme surveillance and harassment are subject to dismissal. *See*, *e.g.*, *Grady*, 2017 WL 35531, at *2 (collecting cases); *Dunigan v. United States*, No. CIV S-10-2965, 2011 WL 1331918, at *2 (E.D. Cal. Apr. 5, 2011) (dismissing pro se plaintiff's complaint pursuant to 28 U.S.C. § 1915(a) where, among other things, plaintiff's complaints of subliminal messaging failed to state plausible claims for which relief could be granted); *Brown v. Parker*, No. 2:10-cv-00960-PMP, 2010 WL 3463627, at *2 (D. Nev. July 13, 2010), *report and recommendation adopted*, No. 2:10-cv-00960-PMP, 2010 WL 3463631 (D. Nev. Aug. 30, 2010) (*pro se* plaintiff's claims of "gang stalking" were "fantastic and delusional" and due to be dismissed under 28 U.S.C. § 1915(a)).

"Complaints that defy reality are not only subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction, they are also subject to dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Grady*, 2017 WL 35531, at *3. Consequently, I respectfully recommend that Farris's complaint be dismissed for lack of subject matter jurisdiction pursuant to Rules 12(b)(1) and 12(b)(6).

---

[3] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Ordinarily, a *pro se* plaintiff should be given at least one chance to amend his complaint before a court dismisses his claims with prejudice. *See Silva v. Bieluch*, 351 F.3d 1045, 1048–49 (11th Cir. 2003). Dismissal with prejudice may still be appropriate, however, if granting leave to amend would be futile. *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Id.* Given the fictitious and fantastical nature of Farris's allegations, even if he were given the opportunity to file a more carefully drafted complaint, he still would not be able to state plausible claims. Accordingly, I recommend that the Court dismiss this action with prejudice.

In light of these recommendations, I further recommend that Met Life's motion to stay timelines and discovery be denied as moot. Finally, I recommend that Farris's motion for default judgment be denied for the foregoing reasons in addition to the fact that no Clerk's default was previously entered.

**IV. RECOMMENDATION.**

Based on the foregoing, I **RESPECTFULLY RECOMMEND** that the Court:

1. **GRANT** Defendant's Motion to Dismiss (Doc. No. 11);

2. **DENY as moot** Defendant's Motion to Stay Timelines and Discovery (Doc. No. 12);

3. **DENY** Plaintiff's Second Motion for Default Judgment (Doc. No. 13);

4. **DISMISS** Plaintiffs Complaint; and

5. **DIRECT** the Clerk of Court to close the file.

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written

objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

   Recommended in Orlando, Florida on May 21, 2018.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE
